David Donald Gabel
THE LAW OFFICE OF DOYLE & DOYLE
636 Morris Turnpike
Short Hills, New Jersey 07078
Telephone: (973) 467-4433
Facsimile: (973) 467-1199
Attorneys for Plaintiff
*Societa Italiana Assicurazioni e Riassicurazioni S.p.A.*

THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SOCIETA ITALIANA ASSICURAZIONI E RIASSICURAZIONI S.p.A. a/s/o Italsempione Group S.p.A., | : | **CIVIL ACTION NO.** |
| Plaintiff, | : | |
| v. | : | **COMPLAINT** |
| PORTS AMERICA, INC., PORT NEWARK CONTAINER TERMINAL, L.L.C. and ZIM INTERGRATED SHIPPING SERVICES LTD., | : | **ELECTRONICALLY FILED** |
| Defendants. | : | |

Plaintiff, Societa Italiana Assicurazioni e Riassicurazioni S.p.A., by and through its attorneys, The Law Office of Doyle & Doyle, as and for its Complaint against defendants Ports America, Inc., Port Newark Container Terminal, L.L.C. and Zim Integrated Shipping Services Ltd. (collectively, "Defendants"), alleges herein upon information and belief as follows:

## PARTIES

1. Plaintiff, Societa Italiana Assicurazioni e Riassicurazioni S.p.A. ("SIAT") is a foreign corporation organized pursuant to foreign law with a place of business in Genoa, Italy. SIAT is engaged in the marine insurance and reinsurance business.

2. Ports America, Inc. ("PAI), a corporation incorporated pursuant to the laws of the

State of Delaware, regularly conducts business in New Jersey and maintains a place of business in New Jersey located at 525 Washington Boulevard, Suite 1660, Jersey City, NJ 07310.

3. Port Newark Container Terminal, L.L.C. ("PNCT") is a limited liability corporation incorporated pursuant to the laws of the state of Delaware and maintains a place of business at 241 Calcutta Street, Newark, NJ 07114 and is a joint venture with PAI and Terminal Investment Limited SA ("TIL"). TIL is a foreign corporation organized pursuant to foreign law with a place of business at Joulehof 16c, 4622 RG Bergen op Zoom, the Netherlands.

4. Zim Integrated Shipping Services Ltd. ("ZIM") is a corporation organized and existing by virtue of the laws of a foreign state with a place of business at c/o Zim American Integrated Shipping Services Co. Inc., 3115 Bean Road, Charlotte NC 28217 and owns, operates, manages and/or charters ocean-going vessels, and acts as a common carrier of goods by water and at all relevant times was and is doing business within the district.

**JURISDICTION**

5. Jurisdiction in this matter is founded upon the basis that this is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

6. Jurisdiction is also founded upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**VENUE**

7. Venue is proper in the United States District Court for the District of New Jersey in that the Defendants conduct business within the jurisdiction consistent with the requirements of 28 U.S.C. § 1391.

8. Venus is also proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the Plaintiff's claims asserted herein occurred in the district.

**FACTS**

9. PNCT leases and actively manages and operates a 260 acre facility located at 241 Calcutta Street, Newark, NJ (the "Terminal").

10. At all times mentioned herein, PAI operated and actively managed PNCT PAI and PNCT provide freight handling services at the Terminal involving the loading and unloading of containerized cargo arriving and departing on ocean going vessels. PAI and PNCT also load and unload containerized cargo arriving and departing the Terminal on railcars and trucks.

11. On or about October 2, 2012, a consignment consisting of kitchenware, advertising materials, catalogues furniture and other items was laden into container ZCSU 868740/2 ("container"), then being in good order and condition, owned and/or consigned to Italsempione SpA ("Italsempione"), was delivered to ZIM and/or its agents at the port of Genoa, Italy for transportation to New York, New York in consideration of an agreed upon freight, pursuant to ZIM bill of lading number ZIMUGOA 300382 dated October 2, 2012.

12. Thereafter, the aforementioned Italsempione consignment was loaded in good order and condition aboard the Defendant ZIM's vessel M/V ZIM TEXAS and the aforesaid bill of lading was issued pursuant to ZIM's terms and conditions for Combined Transport for an intended delivery to IS America LLC at 30 Vesey Street, NY 10007.

13. The aforesaid Italsempione consignment stowed within the container arrived at the Terminal on or about October 27, 2012 at which time such container and the cargo contained therein was discharged onto the Terminal still subject to the terms and conditions of the aforesaid bill of lading.

14. As early as October 19, 2012, and continuing thereafter, PNCT, PAI and ZIM knew, or should have known that a severe storm, then known as Hurricane Sandy ("Sandy") was headed north along the United States' eastern coast.

15. On October 26, 2012 PNCT and PAI convened their first storm preparedness meeting.

16. The last freight shipments out of the Terminal occurred on Saturday October 27, 2012, and by Sunday, October 28, 2012, all freight movements into and out of the Terminal had ceased.

17. On Monday, October 29, 2012, Sandy, as predicated, struck the Terminal, causing a water surge of more than four (4) feet throughout the entire Terminal.

18. Prior to the flooding of the Terminal, PNCT and PAI had accepted delivery of the container within which Italsempione consignment was stowed from ZIM for eventual delivery to IS America LLC.

19. As Sandy approached Newark and evacuation orders were issued for nearby communities, none of the Defendants took any action to have the container in which the Italsempione consignment was stowed removed from within the Terminal confines and moved to an elevated and/or inland location.

20. The Defendants knew, or should have known, that the Terminal where the container in which the Italsempione consignment was stowed would be subject to flooding given Sandy's forecasted magnitude and intensity.

21. The container in which the Italsempione consignment was stowed was within the Terminal confines when Sandy hit and the entire Terminal was flooded.

22. The container was flooded and the Italsempione consignment stowed therein was damaged due to the flooding of the Terminal.

23. As the insurance underwriter for the Italsempione consignment, SIAT was responsible to Italsempione, as its assured, for indemnifying it for the damage sustained to the cargo.

24. SIAT has incurred damages in the sum of €5,665.75 being the total paid to Italsempione for the damage sustained to the cargo.

## CAUSES OF ACTION

### COUNT I: BAILMENT (FOR HIRE) – PNCT AND PAI

25. SIAT incorporates the allegations of Paragraphs 1 through 24 above as though the same were more fully set forth at length herein.

26. The Italsempione consignment stowed within the container was in good order and condition when it was delivered to ZIM and thereafter delivered to PNCT and PAI.

27. At all times the Italsempione consignment stowed within the container was in the exclusive possession and sole custody of PNCT and PAI from the time of delivery of the container to ZIM and including the time the container was within the confines of the Terminal.

28. The sole purpose for PNCT and PAI's possession, custody and control of the Italsempione consignment stowed within the container was so that the container could be delivered to IS America LLC.

29. At all times while the Italsempione consignment stowed within the container was in the exclusive possession and sole custody of PNCT and PAI in their capacity as bailees for hire, and they had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

30. PNCT and PAI breached their duty by failing to take any reasonable precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

31. PNCT and PAI's breach of their duty as bailees for hire to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €5,665.75 being the total paid to its insured Italsempione for the damage sustained to the cargo.

**COUNT II: BAILMENT (CONSTRUCTIVE) – PNCT AND PAI**

32. SIAT incorporates the allegations of Paragraphs 1 through 31 above as though the same were more fully set forth at length herein.

33. The Italsempione consignment stowed within the container was in good order and condition when it was delivered to ZIM and thereafter delivered to PNCT and PAI.

34. At all times the Italsempione consignment stowed within the container was in the exclusive possession and sole custody of PNCT and PAI from the time of delivery of the container by ZIM and including the time the container was within the confines of the Terminal.

35. The sole purpose for PNCT and PAI's possession, custody and control of the Italsempione consignment stowed within the container was so that the container could be delivered to IS America LLC.

36. At all times while the Italsempione consignment stowed within the container was in the exclusive possession and sole custody of PNCT and PAI, in their capacity as constructive bailees they had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

37. PNCT and PAI breached their duty by failing to take any reasonable precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

38. PNCT and PAI's breach of their duty as constructive bailees to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €5,665.75 being the total paid to its insured Italsempione for the damage sustained to the cargo.

**COUNT III: BAILMENT (FOR HIRE) – ZIM**

39. SIAT incorporates the allegations of Paragraphs 1 through 38 above as though the same were more fully set forth at length herein.

40. The Italsempione consignment stowed within the container was in good order and condition when it was delivered to ZIM.

41. At all times the Italsempione consignment stowed within the container was in the exclusive possession and sole custody of ZIM from the time of delivery of the container to ZIM and including the time the container were within the confines of the Terminal.

42. The sole purpose for ZIM's possession, custody and control of the Italsempione consignment stowed within the container was so that the container could be delivered to IS America LLC.

43. At all times while the Italsempione consignment stowed within the container was in the exclusive possession and sole custody of ZIM its capacity as bailee for hire, and it had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

44. ZIM breached its duty by failing to take any reasonable precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

45. ZIM's breach of its duty as bailee for hire to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €5,665.75 being the total paid to its insured Italsempione for the damage sustained to the cargo.

**COUNT IV: BAILMENT (CONSTRUCTIVE) – ZIM**

46. SIAT incorporates the allegations of Paragraphs 1 through 45 above as though the same were more fully set forth at length herein.

47. The Italsempione consignment stowed within the container was in good order and condition when it was delivered to ZIM.

48. At all times the Italsempione consignment stowed within the container was in the exclusive possession and sole custody of ZIM from the time of delivery of the container to ZIM and including the time the container was within the confines of the Terminal.

49. The sole purpose for ZIM's possession, custody and control of the Italsempione consignment stowed within the container was so that the container could be delivered to IS America LLC.

50. At all times while the Italsempione consignment stowed within the container was in the exclusive possession and sole custody of ZIM in its capacity as constructive bailee it had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

51. ZIM breached its duty by failing to take any reasonable precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

52. ZIM's breach of its duty as constructive bailee to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €5,665.75 being the total paid to its insured Italsempione for the damage sustained to the cargo.

**COUNT V: NEGLIGENCE – ALL DEFENDANTS**

53. SIAT incorporates the allegations of Paragraphs 1 through 52 above as though the same were more fully set forth at length herein.

54. The Italsempione consignment stowed within the container was in good order and condition when it was delivered to ZIM and thereafter delivered to PNCT and PAI.

55. At all times while the Italsempione consignment stowed within the container was in the actual, constructive and/or implied possession of ZIM, PNCT and PAI and as such they each had a duty to exercise reasonable care to ensure that the cargo would not be damaged.

56. ZIM, PNCT and PAI breached their duty by failing to take any reasonable precautions to protect the cargo from storm Sandy despite having sufficient advance warning of the storm's forecasted magnitude and intensity.

57. ZIM, PNCT and PAI's acts and/or omissions in failing to take any reasonable precautions to protect the cargo from storm Sandy resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €5,665.75 being the total paid to its insured Italsempione for the damage sustained to the cargo.

**COUNT VI: BREACH OF CONTRACT - ZIM**

58. SIAT incorporates the allegations of Paragraphs 1 through 57 above as though the same were more fully set forth at length herein.

59. On delivery of the Italsempione consignment to IS America LLC the cargo was found to be damaged due to wetting which occurred during the carriage of the cargo as defined by the aforesaid ZIM bill of lading and ZIM's terms and conditions governing the same.

60. The aforesaid damage to the Italsempione consignment was caused due to defendant ZIM's breach of its obligations as carrier under the aforesaid contract of carriage pursuant to which it was obligated to deliver the cargo in same good order and condition as when the cargo was loaded on its vessel.

61. Defendant was negligent in its care and custody of the cargo in that it failed to ensure that the container in which the Italsempione consignment was stowed was properly stowed and handled on and/off the vessel including the time during which the container was landed at the Terminal including the period of time during which the container was exposed to the aforesaid storm, and in that it otherwise failed to properly arrange for the cargo to be safely carried and delivered.

62. ZIM's breach of its obligations as the carrier of the cargo resulted in damage to the cargo as a direct and proximate result of which SIAT has incurred damages in the sum of €5,65.75 being the total paid to its insured Italsempione for the damage sustained to the cargo.

**WHEREFORE**, plaintiff Societa Italiana Assicurazioni e Riassicurazioni S.p.A., demands judgment against defendants Ports America, Inc., Port Newark Container Terminal, L.L.C. and Zim Integrated Shipping Services Ltd. in the amount of €5,665.75, along and together with interest thereon, expenses, reasonable attorney's fees and the costs incurred in this matter, and for such any other, further or different relief as this Court may deem to be just and proper in the circumstances.

Dated: October 28, 2013

**THE LAW OFFICE OF DOYLE & DOYLE**

By: ______________________

David Donald Gabel
636 Morris Turnpike
Short Hills, New Jersey 07078
Telephone: (973) 467-4433
Facsimile: (973) 467-1199
E-Mail: dgabel@doylelaw.net

Attorneys for Plaintiff
Societa Italiana Assicurazioni e Riassicurazioni S.p.A.

and

LENNON, MURPHY, CAULFIELD & PHILLIPS, LLC
Kevin J. Lennon
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
Telephone: (212) 490-6050
Facsimile: (212) 490-6070
E-Mail: KLennon@LMCPlegal.com